<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ELFRIEDA HOGAN,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>KOHL'S CORPORATION; KOHL'S DEPARTMENT STORES, INC., KOHL'S TOMS RIVER, JOHN DOES 1-10 AND ABC CORPORATIONS A-Z,<br><br>　　　　　　　Defendants. | Civil Action No. 20-5058-GC-DEA<br><br>**MEMORANDUM OPINION** |

<u>**CASTNER, District Judge**</u>

This matter comes before the Court on Defendant Kohl's Department Stores, Inc.'s Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. (ECF No. 22.) Plaintiff Elfrieda Hogan opposed the Motion (ECF No. 23), and Defendant replied (ECF No. 24). The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion is **DENIED**.

**I.　　BACKGROUND**

Plaintiff asserts one count for negligence arising from her fall at Defendant's store. Plaintiff alleges that she "tripped over a defectively emplaced clothing fixture that was impermissibly protruding into the tiled walking area." (ECF No. 23 ¶ 6; *see generally* ECF No. 1-1.)

1

Plaintiff alleges that she "was walking through the aisles" at Defendant's store "when she suddenly and unexpectedly was caused to trip over the foot of a clothing stand and/or other condition that had been negligently left protruding into a patron shopping aisle, causing her to suffer serious and permanent injuries." (ECF No. 1-1 ¶ 22; ECF No. 22 ¶¶ 1-2.) After falling, "[P]laintiff did not look back to see what she might have tripped over or whether anything was protruding onto the white tile." (ECF No. 22 ¶ 9.) A photograph of the scene shows a mannequin base allegedly slightly protruding from the carpeted area into the tiled walking area. (*See id.* ¶ 10.) Depicted above the mannequin base is the base of a "metallic rack" clothing fixture sitting fully on the carpeted area and not protruding into the tiled area. (*Id.* ¶ 15.)

Around the time of the incident, Plaintiff signed a customer incident report that notes that she "tripped over corner of fixture." (ECF No. 22-7; ECF No. 22 ¶ 20.) The store associate who wrote the report testified that "corner" referred to the corner closest to Plaintiff's shoes in the photograph. (ECF No. 22 ¶ 21; ECF No. 22-8 at 36:10-38:3.) Defendant's written policies on "Risk Management" include a section on "Fixture Safety," instructing that "[f]ixtures should not protrude into the Race Track aisles," with a demonstrative of a fixture protruding from a carpeted area into a tile area. (ECF No. 23 at 7 ¶ 8; ECF No. 22-10 at 5.) Two store employees also testified that Kohl's store policies require that fixtures not encroach over the edge of the walkway tile in the store. (ECF No. 22 ¶ 22.)

During her deposition, more than two years later, Plaintiff could not recall precisely what she tripped over or what direction she was walking when she tripped. (ECF No. 22 ¶¶ 12-15; ECF No. 23 at 2 ¶¶ 12-15.) At times she recalled the mannequin base; other times, the metallic rack. (ECF No. 22 ¶¶ 12-17; ECF No. 23 at 2-3 ¶¶ 12-17.) Nor could plaintiff say, if she tripped on the mannequin base, what part of the base her foot might have contacted. (ECF No. 22 ¶ 18.)

After her deposition, however, Plaintiff served an affidavit stating that "the area where I fell is reflected in the photograph attached as an exhibit in my deposition. The stand/fixture next to my shoes in the photo is what caused me to fall." (*Id.* ¶ 19; *see* ECF No. 22-6.)

Plaintiff's liability expert, Michael D. Leshner, P.E., issued a report on June 29, 2021. (ECF No. 22-10.) Leshner did not inspect the store or its fixtures and instead relied on, among other things, the post-accident photograph and "[p]ublicly available photographs" of other stores. (ECF No. 22-10 at 2; ECF No. 22 ¶¶ 24, 26.) Leshner opined that Defendant had violated both "its own internal safety policy regarding the placement of fixtures" and "basic fire safety[,] which requires the means of egress to be clear." (ECF No. 22-10 at 15.)

## II.     PROCEDURAL HISTORY

Plaintiff initiated this one-count negligence action against Defendant in the Superior Court of New Jersey, Law Division, Camden County. (ECF No. 1 at 1.) Defendant then removed the matter to this Court. (ECF No. 1.)

The matter went to arbitration. (*See* ECF No. 19.) Some of the arbitrator's conclusions are as follows:

> It was established [Defendant]'s practice and safety procedure to require that the white tile walkway remain free from all impediments including racks, fixtures, mannequin bases and the like. . . .
>
> At her deposition 28 months after the incident in question, [Plaintiff] was unclear as to what her left foot impacted which resulted in her trip and fall. . . . However, it is clear that both [store employees who testified] understood [Plaintiff's] belief, immediately after her fall, that her left foot struck the base, or fixture, upon which a mannequin stood as shown in the right central portion of the subject photo.
>
> The top edge of the mannequin base/fixture protrudes slightly into the white tile walkway.
>
> The subject photo depicts [Plaintiff]'s sandals immediately after her fall. The right foot sandal remains in place on [Plaintiff]'s right foot.

3

> The left sandal is no longer on her left foot but is placed half on the carpet area of the floor and half on the white tile walkway.
>
> It is highly unlikely that after [Plaintiff] fell and fractured her left hip, she was able to travel any significant distance from the place where she fell and awaited arrival of EMT assistance.
>
> [(ECF No. 23-1 at 11.)]

The arbitrator concluded that the mannequin base's placement was a "breach of duty [that] directly and proximately resulted in injury to Plaintiff." (*Id.* at 12.)

Thereafter, Defendant requested a trial de novo (ECF No. 20) and ultimately filed its motion for summary judgment (ECF No. 22).

### III. LEGAL STANDARD

Pursuant to Rule 56(c), the Court will grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court does not "weigh the evidence to determine the truth of the matter," but rather assesses "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 249-52. "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).

The Court construes all facts and inferences in the light most favorable to the non-moving party. *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue

4

for trial." *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)) (internal quotation marks omitted).

IV. **DISCUSSION**

    A. **Negligence**

To state a claim for negligence under New Jersey law, a plaintiff must allege "(1) duty of care, (2) breach of duty, (3) proximate cause, and (4) actual damages." *Campbell Soup Supply Co. LLC v. Protenergy Nat. Foods Corp.*, Civ. No. 16-684, 2016 WL 7104840, at *2 (D.N.J. Dec. 5, 2016) (citing *Weinberg v. Dinger*, 524 A.2d 366, 373 (N.J. 1987)).

        1. Proximate Cause

Defendant's Motion first contests the element of proximate cause. Proximate cause is "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (quoting *Conklin v. Hannoch Weisman*, 678 A.2d 1060, 1071 (N.J. 1996)). "Although proximate cause is ordinarily a jury issue, it may be ruled on as a matter of law when reasonable minds could not differ." *Firstmeyer v. Cohen*, No. A-0982-07T3, 2008 WL 2520794, at *1 (N.J. Super. Ct. App. Div. June 26, 2008) (citing *Fluehr v. City of Cape May*, 732 A.2d 1035, 1041 (N.J. 1999)). "[S]ummary judgment is appropriate where 'no reasonable jury could find that the plaintiff's injuries [have been] proximately caused by the' defendant's conduct." *Thompson v. Garden State Arts Ctr., Partners*, No. A-3299-05T5, 2007 WL 1598616, at *3 (N.J. Super. Ct. App. Div. June 5, 2007) (quoting *Vega by Muniz v. Piedilato*, 713 A.2d 442, 449 (N.J. 1998)). "[T]he issue of a defendant's liability cannot be presented to the jury simply because there is some evidence of negligence; the plaintiff must introduce evidence that affords a reasonable basis for the conclusion that it is more likely than not that the conduct of

n/a
n/a

the defendant was a cause in fact of the plaintiff's injury." *Thompson*, 2007 WL 1598616, at *3 (citing *Davidson v. Slater*, 914 A.2d 282, 293 (N.J. 2007)).

Defendant asserts that "no facts of any competent nature support" Plaintiff's claim that she tripped over the mannequin base rather than the adjacent clothing rack. (ECF No. 22-1 at 4-5.) Defendant gives great weight to Plaintiff's equivocal testimony about precisely what she tripped on, chiefly relying on two cases in support: *Devincentis v. Wal-Mart Stores, Inc.*, Civ. No. 09-3138, 2010 WL 1931260, at *4-5 (D.N.J. May 13, 2010), where the court granted summary judgment after finding that plaintiff's "own speculative testimony" that she slipped on spilt soda could not overcome defendant's evidence that the soda spilled after plaintiff's fall; and *Wasielewski v. Sands Hotel & Casino*, Civ. No. 04-2667, 2005 WL 1088952, at *5 (D.N.J. May 10, 2005), where the court granted summary judgment because plaintiffs "only provided their self-serving testimony that she fell and mere speculation as to what caused her fall." (ECF No. 22-1 at 5-7.)

However, unlike in those cases, Plaintiff here does not rely solely on her own recollection at her deposition to survive summary judgment. In her Opposition, Plaintiff asserts that she also relies on the customer incident report, which states that Plaintiff "tripped over corner of fixture"; the photograph taken immediately after the accident, depicting Plaintiff's removed shoe next to the mannequin base, which arguably appears to protrude, even if only slightly,[1] into the tile area in violation of Defendant's policy and retail store standards; and the sales associate's testimony

---

[1] The store's area supervisor, who took the post-accident photograph but did not investigate the alleged protrusion, testified that according to Defendant's risk management safety policy, "[i]f it protruded over the aisle, . . . it would be a tripping hazard," and agreed that it "would violate policy . . . [w]hether it's an eighth of an inch or a quarter of an inch or anything above beyond zero." (ECF No. 22-9 at 31:19-32:6.)

that the tripped-over "corner" referenced in the report was the corner of the mannequin base depicted in the post-accident photograph. (ECF No. 23-1 at 15-16, 19; ECF No. 23-3 at 24.)

Defendant alternatively asserts that, even if Plaintiff tripped over the mannequin base, she has not established what part of the base caused her to trip, as Plaintiff cannot say whether she tripped over the part that protruded into the tile area or the part that appears in line with the edge of the tile. (ECF No. 22-1 at 8.) Defendant relies on *Ludwig v. Michaels Arts & Crafts Store*, where the court ruled that the plaintiff's inability to say whether she tripped over an object's allegedly hazardous part rather than its unremarkable part destroyed her ability to prove causation:

> A mere possibility that [the plaintiff] contacted the portion of the base plate that extended into the walkway – as opposed to the portion of the base plate that did not extend into the walkway – will not be sufficient to discharge her burden of proof at trial. . . . "[W]hen the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."
>
> [Civ. No. 18-10306, 2020 WL 6883451, at *7 (D.N.J. Nov. 24, 2020) (citing and quoting *Townsend*, 110 A.3d at 61).]

This Court disagrees that *Ludwig*'s facts are analogous to the facts in this case. In opposing summary judgment, the plaintiff in *Ludwig* proffered nothing but her own unclear testimony, along with the proposition that her unknowingness of what "caused her to fall does not eliminate the possibility that a reasonable jury could conclude [her] fall was caused by the hazardous condition." 2020 WL 6883451, at *7. Here, as detailed above, Plaintiff relies on more than her own testimony to defeat summary judgment. (*See* ECF No. 23-1 at 15-16.)

    2.  Plaintiff's Post-Deposition Affidavit

Defendant also asserts that Plaintiff's post-deposition affidavit, in which she swore that the mannequin base caused her fall, should be disregarded as a "sham" affidavit. (ECF No. 22-1 at 9.) The sham affidavit doctrine provides a narrow exception to the usual rules of summary

7

judgment. That doctrine "refers to the trial courts' practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony." *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004); AFFIDAVIT, Black's Law Dictionary (11th ed., 2019) (stating that a sham affidavit is an "affidavit that contradicts clear testimony previously given by the same witness, usu. used in an attempt to create an issue of fact in response to a motion for summary judgment"). To be covered by the sham affidavit doctrine, the affidavit testimony must actually *contradict* previous deposition testimony, not merely differ from it or be in tension with it. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 210 (3d Cir. 2022) ("[T]he sham affidavit rule permits striking only contradictory statements in later-provided affidavits or declarations."); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) (referring to sham affidavits as "contradictory affidavits").

Indeed, even a directly contradictory affidavit is not automatically excluded. Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2738 (4th ed.) ("[A] witness' affidavit will not be automatically excluded because it conflicts with the witness' earlier or later deposition."). The court must use its judgment, though it generally should take deposition testimony as more reliable than affidavit evidence, because the former has the benefit of cross examination. *Id.*; *U.S. v. Johns-Manville Corp.*, 259 F. Supp. 440, 456 (E.D. Pa. 1966) ("The fact that certain statements of the affiant contained in . . . his affidavit are in conflict with his deposition . . . is not grounds for excluding the statements in the affidavit. However, the testimony in the deposition will be treated as more reliable than the statements in the affidavit.") (internal citations omitted).

The purpose of the sham affidavit doctrine, then, is to prevent a party from manufacturing an issue of fact to defeat summary judgment, especially after the opposing party has spelled out its

case in its summary judgment motion. *See In re CitX Corp., Inc.*, 448 F.3d 672, 679 (3d Cir. 2006); *Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

Defendant argues that Plaintiff's affidavit is patently inconsistent with her prior deposition testimony that she may have tripped on a rack or did not remember what caused her fall. (ECF No. 22-1 at 10.) In opposition, Plaintiff points to her testimony that "it might have been that mannequin, but I don't remember clearly anymore," demonstrating that "she did not have a perfect recollection of the events[,] which transpired over two years prior." (ECF No. 23-1 at 20.) The Court concludes that Plaintiff's post-deposition affidavit does not directly contradict her deposition testimony as to warrant the affidavit's exclusion. Rather, the Court finds that Plaintiff's post-deposition affidavit sought to clarify Plaintiff's recollection of the events given the length of time between the incident and the deposition.

The Court reiterates that Plaintiff does not rely on her affidavit to manufacture an issue of fact, as the record includes enough for a reasonable jury to find that Plaintiff previously reported that she tripped over the corner of the mannequin base. And, construed in a light most favorable to Plaintiff, her uncertain testimony that "it might have been that mannequin, but I don't remember clearly anymore" is not entirely at odds with her recollection "[a]fter having time to reflect on the incident after her deposition," and "[a]fter being given the opportunity to more closely review the photograph in person, rather than via Zoom screen share during her deposition," as Plaintiff asserts. (ECF No. 23-1 at 18, 20.) As a result, the Court will not disregard Plaintiff's affidavit, which only bolsters that genuine disputes of material fact exist to preclude summary judgment.

3. Constructive Notice

Defendant also contests that it had actual or constructive notice of the protruding mannequin base.[2] "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." *Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N.J. 2003). Specifically, a business owner must "discover and eliminate dangerous conditions," "maintain the premises in safe condition," and "avoid creating conditions that would render the premises unsafe." *Id.* To prove a breach of this duty, a plaintiff must show that "the defendant had actual or constructive knowledge of the dangerous condition that caused the action." *Id.* Constructive notice exists where a condition existed "for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." *Troupe v. Burlington Coat Factory Warehouse Corp.*, 129 A.3d 1111, 1114 (N.J. Super. Ct. App. Div. 2016). A plaintiff need not prove exactly how long the dangerous condition existed if the facts otherwise demonstrate that a defendant had constructive notice. *See McCracken v. Target Corp.*, Civ. No. 09-4816, 2011 WL 1466075, at *4 (D.N.J. Apr. 18, 2011). Further, if a plaintiff presents material facts that suggest the defendant should have been aware of the dangerous condition, summary judgment should be denied because whether a defendant in fact had constructive notice is a question for the jury. *See Monaco v. Hartz Mountain Corp.*, 840 A.2d 822, 834 (N.J. 2004) (holding that given the property manager's "inspections and the obviousness of the problems . . . the issue of notice is plainly one for the jury").

While "[c]onstructive notice is usually a question of fact for the jury" summary judgment may be appropriate if "no reasonable juror could conclude otherwise." *Garcia v. Walmart, Inc.*,

---

[2] Plaintiff does not appear to assert that Defendant had actual notice of the alleged tripping hazard.

Civ. No. 17-03118, 2021 WL 754006, at *5 (D.N.J. Feb. 26, 2021) (citing *Troupe*, 129 A.3d at 1114).

Defendant asserts that, assuming Plaintiff did trip over the mannequin base and the base was protruding *after* she tripped over it — facts that Defendant disputes — Plaintiff offers no evidence that the base was in the protruding position *before* her fall or that Defendant had actual or constructive notice of the protrusion. (ECF No. 22-1 at 11-12 (emphasis added).) Defendant further asserts that "Plaintiff has not cited a single fact suggesting how long before the incident the mannequin base was misaligned." (ECF No. 24 at 6.)

Time, although an important consideration, is not the only factor. A plaintiff can prevail without such evidence, if she can point to other factors that should have made the defendant aware of the condition. *See, e.g.*, *Bezglasnaya v. Trump Ent. Resorts, Inc.*, Civ. No. 11-564 JS, 2013 WL 796308, at *4 (D.N.J. Mar. 4, 2013) (denying summary judgment and finding a question of fact as to constructive notice of dangerous conditions when employees were working nearby and hostess walked by location where the fall occurred); *McCracken*, 2011 WL 1466075, at *4 (denying summary judgment and reasoning in part that "a reasonable jury could conclude that [defendant] should have monitored the floor to ensure that it was clear of hazards on a minute-by-minute basis"); *Cuzco v. Wal-Mart Stores, Inc.*, Civ. No. 17-07125, 2022 WL 4300183, at *5 (D.N.J. Sept. 19, 2022) (finding a question of fact as to constructive notice because the subject item was prone to spills and the accident occurred in a high-traffic area, which a reasonable jury could find warranted more frequent "safety sweeps")

Here, Plaintiff presents evidence that Defendant's "manual made clear to employees that fixtures could not protrude into the aisle because it would pose a tripping hazard to customers," and that, according to the store's area supervisor, "employees were responsible for identifying

11

tripping hazards '[a]ll the time throughout the day.'" (ECF No. 23-1 at 22-23.) The area supervisor also testified that even tiny protrusions into the aisle violated Defendant's safety policy. *See* p.6 n.1 *supra*. The area supervisor further testified that other than walk-throughs that employees performed upon opening and closing the store, there was no schedule for or records of inspections throughout the day; inspections were done "continually" and on an "as-needs basis." (ECF No. 22-9 at 17:16-18:2, 19:23-20:5.) According to the customer incident report, the incident occurred at "12:18" (ECF No. 22-7), which a reasonable jury could find was late enough in the day for employees to have noticed the alleged tripping hazard. Moreover, Plaintiff presents evidence that she tripped in an area that invited patrons to navigate aisles and browse and inspect clothes hanging on racks or displayed on mannequins, the sum of which lends itself to a potential for tripping on protruding fixtures. Based on these facts, taken together, a reasonable jury could find that Defendant should have closely monitored the area where Plaintiff fell, and that if the area was closely monitored, Defendant would have been aware of the tripping hazard that allegedly caused Plaintiff's fall. *See Cuzco*, 2022 WL 4300183, at *5-6 (holding that the evidence in the record, when taken together, raised a triable issue of whether Walmart had constructive notice of the fabric softener spill).

### B. Net Opinion Rule

Finally, Defendant argues that Leshner's opinion constitutes a "net opinion." (ECF No. 22-1 at 27-30.) "Under New Jersey law, an 'expert's bare conclusions, unsupported by factual evidence' are an inadmissible 'net opinion.'" *W. Am. Ins. Co. v. Jersey Cent. Power & Light Co.*, Civ. No. 03-6161, 2008 WL 5244232, at *5 (D.N.J. Dec. 15, 2008) (quoting *Buckelew v. Grossbard*, 435 A.2d 1150, 1156 (1981)). Pursuant to the net opinion rule, the expert's opinion "must be based on a proper factual foundation." *Dawson v. Bunker Hill Plaza Assocs.*, 673 A.2d

847, 853 (N.J. Super. Ct. App. Div. 1996).  The expert's testimony should be excluded "if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture." *Id.* (quoting *Vuocolo v. Diamond Shamrock Chemicals Co.*, 573 A.2d 196, 202 (N.J. Super. Ct. App. Div. 1990)).  Simply put, an expert is required "to give the 'why and wherefore' of the opinion, rather than a mere conclusion."  *Curtis v. Besam Grp.*, Civ. No. 05-2807, 2007 WL 3232589, at *7 (D.N.J. Oct. 31, 2007).

To be clear, "the admissibility of expert testimony in federal court is not governed by the New Jersey 'net opinion' rule, but by the Federal Rules of Evidence." *Gurvey v. Twp. of Montclair New Jersey*, Civ. No. 19-17525, 2022 WL 970303, at *19 (D.N.J. Mar. 31, 2022); *Holman Enterprises v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 (D.N.J. 2008) ("[T]he 'net opinion' rule is neither an evidentiary rule under the Federal Rules of Evidence nor a factor in the *Daubert* analysis.").  Still, some courts in this District assess net opinion arguments under the *Daubert* analysis. *See Jersey Cent. Power & Light Co.*, 2008 WL 5244232, at *5 (compiling cases).  Other courts analyze whether the expert's opinion is of "assistance to the trier of fact" and sufficient to establish causation.  *See May v. Atl. City Hilton*, 128 F. Supp. 2d 195, 198 (D.N.J. 2000). Irrespective of whether this issue is analyzed under *Daubert* or as an independent net opinion analysis, "the inquiry remains the same—whether the expert's opinion will assist the trier of fact." *Iudici v. Camisa*, Civ. No. 12-3466, 2022 WL 3998295, at *3 (D.N.J. Sept. 1, 2022).

Defendant relies on *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, where the United States Court of Appeals for the Third Circuit held that an expert's opinion that inadequate stripping in a bathtub caused the plaintiff to fall was "based on pure speculation, rather than reasonable inference," and thus was "without foundation and . . . inadmiss[i]ble."  82 F.3d 69, 75 (3d Cir.

13

1996). The Third Circuit reasoned that "[i]t [was] speculative to conclude that the inadequate stripping caused [the plaintiff]'s injuries when no evidence in the record indicate[d] where [the plaintiff] was standing in the tub," and that "[i]t [was] also speculative to infer that [the plaintiff] was standing between the strips at the time of the accident solely from the fact that she fell." *Id.*

Here, Leshner noted evidence beyond mere speculation that Plaintiff tripped on the mannequin base's protruding corner. Contrary to Defendant's assertion, Plaintiff's post-deposition affidavit is only one of several pieces of the record that Leshner considered in preparing his report. Leshner also considered, among other things, the customer incident report and the sales associate's testimony about its content, the post-accident photograph, and Defendant's risk-management policies and Defendant's employees' testimony about the policies (*see generally* ECF No. 22-10) — the sum of which supports a legitimate inference that Plaintiff tripped over the protruding mannequin base. And, Leshner cited to relevant literature on slip and falls, including "Slip and Fall Practice" and the "National Safety Council, Accident Prevention Manual," to set forth the industry standards that justified his conclusion. (*See* ECF No. 22-10 at 10.) The fact that Leshner did not visit Defendant's store to inspect the subject fixture may go to the weight that a fact finder may give his report, but it does not make Leshner's opinion inadmissible.

V.   **CONCLUSION**

The Court, construing all facts and legitimate inferences in the light most favorable to Plaintiff, concludes that there are genuine issues of material fact for trial, and thus **DENIES** Defendant's Motion for Summary Judgment. An appropriate Order will follow.

Dated: April 30, 2023         */s/ Georgette Castner*
                              GEORGETTE CASTNER, U.S.D.J.